Darryn L. DUCHON and Anthony McIlvenna, Appellants–Plaintiffs,

v.

Roberta ROSS and John Harris III, Appellees–Defendants.

No. 49A02–9201–CV–18.

Court of Appeals of Indiana, Second District.

Sept. 29, 1992.

John D. Schiff, Indianapolis, for appellants-plaintiffs.

Roberta L. Ross, Ross & Brunner, Indianapolis, for appellees-defendants.

## CASE SUMMARY

BUCHANAN, Judge.

Plaintiffs-appellants Darryn Duchon (Duchon) and Anthony McIlvenna (McIlvenna) (hereinafter collectively referred to as Tenants) bring this interlocutory appeal from the trial court's denial of their motion for summary judgment in their action against defendants-appellees Roberta Ross (Ross) and John Harris III (Harris) (hereinafter collectively referred to as Landlords) for the return of their security deposit.

We reverse.

## FACTS

The facts most favorable to the nonmoving parties (the Landlords) reveal that the Tenants rented a house owned by Harris. They paid a $490 security deposit and leased the house for one year, from March 1, 1990, through February 28, 1991. Almost all of the Tenants' dealings with respect to the house were made with Ross. They negotiated the lease with her, sent rent payments to her and contacted her when maintenance or other problems arose.

Ross notified the Tenants that when the lease expired on February 28, 1991, it would not be renewed. The Tenants vacated the premises, sent Ross the keys and informed her to send future correspondence to Duchon at his business address.[1]

On March 8, 1991, Ross sent Duchon a letter stating that a carpet needed to be shampooed, that the locks had been rekeyed, a washer and dryer were no longer in the residence, and the backyard was damaged because it had been used for vehicle parking and needed to be reseeded. The letter provided that once the costs associated with the damages were assessed, the Tenants would receive a final accounting.

A dispute between the parties arose concerning whether certain damages should be charged to the Tenants. Eventually the Tenants filed suit to recover their security deposit, reasonable attorney's fees and court costs. The Landlords counterclaimed for the damages to the house. The Tenants moved for summary judgment, claiming the undisputed facts demonstrated the Landlords had failed to comply with the pertinent statutes regarding the return of security deposits. The trial court concluded that genuine issues of material fact existed and denied the motion. The trial court certified the denial of summary judgment for interlocutory appeal, and this court accepted jurisdiction.

---

1. Both Duchon and Ross are attorneys at law.

## ISSUE

Whether the trial court erred when it denied the Tenant's motion for summary judgment?

## DECISION

PARTIES' CONTENTIONS—The Tenants argue that Ross's letter of March 8, 1991, was insufficient as a matter of law to satisfy the notification requirements of the statutes relating to the return of security deposits. The Landlords reply that genuine issues of material fact exist as to whether the letter satisfied the statutory requirements and that summary judgment was properly denied.

CONCLUSION—The Tenants are entitled to summary judgment.

This is the first time the sufficiency of a notice submitted pursuant to the statutes enacted in 1989 by the General Assembly, namely Ind.Code 32–7–5–1 through –19, has been questioned in this state. These statutes concern the duties of landlords to return security deposits to tenants. The provisions most relevant to our decision are found in IC 32–7–5–12 through –16 (hereinafter referred to by Section number) which provide:

Section 12:

"(a) Upon termination of a rental agreement, all of the security deposit held by the landlord *shall* be returned to the tenant, except for any amount applied to:

(1) the payment of accrued rent;

(2) the amount of damages that the landlord has or will ·reasonably suffer by reason of the tenant's noncompliance with law or the rental agreement; and

(3) unpaid utility or sewer charges that the tenant is obligated to pay under the rental agreement;

*all as itemized by the landlord in a written notice* delivered to the tenant *together with the amount due* within forty-five (45) days after termination of the rental agreement and delivery of possession. The landlord is not liable under this subsection until supplied by the tenant with a mailing address to which to deliver the notice *and amount* prescribed by this subsection. Unless otherwise agreed, the tenant is not entitled to apply a security deposit to rent.

(b) If the landlord fails to comply with subsection (a), the tenant may recover all of the security deposit due the tenant and reasonable attorney's fees.

(c) This section does not preclude the landlord or tenant from recovering *other damages* to which either is entitled.

(d) The owner of the dwelling unit at the time of the termination of the rental agreement is bound by this section." (Emphasis supplied)

Section 13:

"A security deposit may be used only for the following purposes:

(1) To reimburse the landlord for actual damages to the rental unit or any ancillary facility that are not the result of ordinary wear and tear expected in the normal course of habitation of a dwelling.

(2) To pay the landlord for all rent in arrearage under the rental agreement, and rent due for premature termination of the rental agreement by the tenant.

(3) To pay for the last payment period of a residential rental agreement where there is a written agreement between the landlord and the tenant that stipulates the security deposit will serve as the last payment of rent due.

(4) To reimburse the landlord for utility or sewer charges paid by the landlord that:

(A) are the obligation of the tenant under the rental agreement; and

(B) are unpaid by the tenant."

Section 14:

"In case of damage to the rental unit or other obligation against the security deposit, the landlord *shall* mail to the tenant, *within forty-five (45) days* after the termination of occupancy, *an itemized list of damages* claimed for which the security deposit may be used as provided in section 13 of this chapter, *including the estimated cost of repair for*

*each damaged item* and the amounts and lease on which the landlord intends to assess the tenant. The list *must* be *accompanied by a check or money order for the difference between the damages claimed and the amount of the security deposit held by the landlord."* (Emphasis supplied).

Section 15:

"Failure by the landlord to comply with the notice of damages requirement within the forty-five (45) days after the termination of occupancy *constitutes agreement by the landlord that no damages are due,* and the landlord *must* remit to the tenant immediately the *full* security deposit." (Emphasis supplied).

Section 16:

"A landlord who fails to provide a written statement within forty-five (45) days of termination of the tenancy or the return of the appropriate security deposit *is liable* to the tenant in an amount equal to the part of the deposit withheld by the landlord, *plus* reasonable attorney's fees and court costs." (Emphasis supplied).

■ Our inquiry is whether Ross's March 8th letter satisfies these requirements, because there was no other writing sent to the Tenants within forty-five days after the termination of the tenancy. The letter provided, in pertinent part:

"In response to your letter of February 27, 1991, please be advised I have taken the following actions:

1) Because a utility company contacted me on February 12, 1991, regarding your disconnect notice of February 19, 1991, Mr. Harris and I are aware you vacated the premises before February 18, 1991, and not February 22, 1991, as you represent.

2) Upon said vacation of the residence, the window was left open on below freezing days with the heat disconnected. You have a duty to maintain the property until the end-term of your lease. Luckily, the open window was discovered in time as was the utility disconnect; consequently, instead of having damage to pay, you will only be responsible for the utility charges through March 1, 1991.

3) The carpeting in the diningroom is filthy and needs to be shampooed. This cost will be charged back to you.

4) Because the locks were re-keyed by an apparently unknown vandal while the property was still under your control and before March 1, 1991, you are responsible for the necessity of re-keying all of the locks.

5) No tenant took possession of the property before March 2, 1991, nor did Mr. Harris, nor I.

6) The washer and dryer Mr. Harris had purchased are no longer in the residence. Do you have knowledge of where these were taken?

7) The backyard has been destroyed by a car continually using it as a parking lot during inclement weather and will need to be reseeded and restored.

8) The cleaning job was very well done and except for nail holes, Mr. Harris and I felt the cleanliness of the residence was excellent.

Once the costs associated with the above items are determined, you will receive a final accounting.

Thank you."

*Record* at 67–68.

The Tenants are quite critical of this letter. They say it does not include the estimated cost of repair for each damaged item and it was not accompanied by a check or money order for the difference between the damages claimed and the security deposit, as required by Section 14. On the face of it, this letter is insufficient to meet the duty imposed on the Landlords by Section 14.

■ Section 14's direction is explicit and mandatory. It says the landlord "shall" mail an itemized list of damages "including" the estimated costs of repair and the list "must" be accompanied by payment for the excess deposit (if any). Ross's letter is plainly inadequate under the statute as the letter provides that costs for repairs had not been determined. Disputes over the costs of repair or the assessment of damages do not relieve the Landlords of the requirement to provide the estimated costs

of repair to the Tenants within forty-five days of the termination of the tenancy. As there was no other writing reflected in the record, we conclude the Landlords failed to comply with the notice of damages requirement as a matter of law.

 Contrary to the Landlords' argument, the legal effect of written documents is a question of law for trial courts to decide, whether they be ambiguous or unambiguous. *Flying Squadron Foundation v. Crippen* (1930), 201 Ind. 482, 169 N.E. 843; *Ford v. Cleveland* (1942), 112 Ind.App. 420, 44 N.E.2d 244. The letter simply omitted some of the requirements of Section 14. As the letter is unambiguous there is no question of fact for a jury to decide. Because summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, *Havens v. Ritchey* (1991), Ind., 582 N.E.2d 792, the trial court should have granted the Tenants' summary judgment motion.

The factual controversies between the parties as to the proper assessment of damages and costs of repair are immaterial. Section 15 provides that the failure to comply with the notice requirement constitutes agreement that no damages are due and that the landlord "must" remit the full security deposit to the tenant. *See Skiver v. Brighton Meadows* (1992), Ind.App., 585 N.E.2d 1345. Section 16 also allows the tenant to recover reasonable attorney's fees and court costs from delinquent landlords. Therefore, the only issue for the trial court to decide is the assessment of costs and attorney's fees.

The Landlords seek support from Section 12(c) which states that "[t]his section does not preclude the landlord or tenant from recovering *other damages* to which either is entitled." IC 32–7–5–12(c). It is true that Section *12* does not prevent the Landlords from pursuing their claims for "other damages," which could include claims for amounts in excess of the security deposit or other types of damages not specified in Section 12. However, the clear intent of Section *15* is that if a landlord fails to provide the requisite notice within the 45–day period there are no "other damages" to collect. *See Skiver, supra.* A landlord can attempt to pursue a claim for "other damages" only if it returns the tenant's security deposit within 45 days or provides the statutory notice. Because the Landlords failed to give the Tenants the required notice, the Tenants are entitled to judgment by operation of law.

Judgment reversed and remanded for further proceedings consistent herewith.

SHIELDS and MILLER, JJ., concur.