Gary FIGG, Appellant (Defendant Below),

v.

BRYAN RENTAL INC., Appellee (Plaintiff Below).

No. 53A04–9408–CV–336.

Court of Appeals of Indiana, Fourth District.

Jan. 30, 1995.

Rehearing Denied March 27, 1995.

Transfer Denied July 27, 1995.

Roy James Graham, Bloomington, for appellant.

James F. Thompson, Bloomington, for appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Gary Figg appeals the trial court's grant of summary judgment in favor of Bryan Rental, Inc. We affirm.

## ISSUES

I.  Did the trial court err in granting summary judgment in favor of Bryan Rental, Inc.?

II.  Is Figg entitled to attorney fees pursuant to Ind.Code 34–1–32–1?

## FACTS

On February 26, 1991, Gary Figg entered into a lease agreement with Bryan Rental, Inc.  Figg agreed to rent an apartment for a period of twelve months, beginning August 14, 1991 and ending August 14, 1992.  Figg paid a security deposit of $295.00 and agreed to pay monthly rent of $325.00.

On March 27, 1992, Figg's attorney sent Bryan Rental notice that Figg had vacated the apartment.  Figg's attorney enclosed the front door and mailbox keys.  Three days later, Figg's attorney sent David Kamen, president of Bryan Rental, a letter indicating that Figg's vacation of the premises was permanent, and that he would not be returning for the remainder of the lease.  Kamen telephoned Figg and requested that he continue his lease payments as required by the lease agreement.  Figg agreed to continue his lease payments until the lease term ended or until a subtenant could be found.  On April 13, 1992, Figg paid the rent for the period from March 14, 1992 to April 14, 1992.  Kamen accepted and cashed the check.

On May 22, 1992, Figg's attorney sent Bryan Rental a demand letter stating that Figg had vacated the apartment on March 27, 1992, and that he was no longer liable for rent payments.  Figg's attorney requested that Bryan Rental refund Figg's security deposit, as well as rent for the period from March 27, 1992 to April 14, 1992.  In response, Bryan Rental sent Figg a written accounting of his security deposit on May 26, 1992.  The accounting stated that Bryan Rental had applied Figg's security deposit to the rent which Figg owed for the remaining months of the lease term.

On June 15, 1992, Bryan Rental filed a complaint seeking $2,456.29 [1] in Monroe Circuit Court, Small Claims docket.  Figg filed a summary judgment motion, and Bryan Rental filed a summary judgment motion.  The trial court granted Bryan Rental's motion, denied Figg's, and held a hearing on damages.  After the hearing, the trial court issued a judgment order for Bryan Rental in the amount of $1,005.00.[2]  Figg now appeals the denial of his summary judgment motion and the grant of summary judgment in favor of Bryan Rental.

## DECISION

### I.  SUMMARY JUDGMENT

Summary judgment is an appropriate disposition if the "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Ind.Trial Rule 56(C).  Relying on specifically designated evidence, the moving party bears the burden of showing prima facie that there are no genuine issues of material fact and that the moving party is entitled to judgment

1.  The following is an itemization of the costs sought by Bryan Rental:

| | |
|---|---|
| 1) April 14, 1992 Rent Payment | $325.00 |
| 2) May 14, 1992 Rent Payment | 325.00 |
| 3) June 14, 1992 Rent Payment | 325.00 |
| 4) July 14, 1992 Rent Payment | 325.00 |
| 5) August 14, 1992 Rent Payment | 325.00 |
| 6) Late fee as of 6–9–92 (April) | 112.00 |
| 7) Late fee as of 6–9–92 (May) | 52.00 |
| 8) Cleanup of apartment | 360.00 |
| 9) Certified Letter | 2.29 |
| 10) Security Deposit (Credit) | 295.00 |
| Total Due (Legal fees excluded) | $1,856.29 |
| Attorney Fees | 600.00 |
| Total | $2,456.29 |

We note that although Bryan Rental initially sought five months rent from Figg, Bryan Rental later acknowledged that Figg owed four months rent on the remainder of his lease term.

2.  The judgment order states in pertinent part as follows:

"1) The Plaintiff is entitled to the damages specifically referred to in his letter, dated May 26, 1993, to the Defendant, Gary Figg, which is Defendant's Exhibit 5 which include:

| | |
|---|---|
| Rent | $1,300.00 |
| Security Deposit Credit | 295.00 |
| Total Due | $1,005.00 |

2) But for the Defendant's disagreement with certain findings of the Court, as appealed to the Indiana Court of Appeals, the defense agreed to the above referenced figures on the record; and 3) The Plaintiff is not entitled to attorney fees.

as a matter of law. *Hermann v. Yater* (1994), Ind.App., 631 N.E.2d 511, 513, *reh'g denied.* If the moving party meets these two requirements, the burden shifts to the non-movant to set forth specifically designated facts showing that there is a genuine issue for trial. T.R. 56(E); *Id.*

On appeal, we are bound by the same standard as the trial court, and we consider only those matters which were designated at the summary judgment stage. *Id.* The party that lost in the trial court has the burden to persuade the appellate court that the trial court erred. *Id.* Summary judgment will be affirmed on appeal if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court.[3] *Fawley v. Martin's Supermarkets, Inc.* (1993), Ind. App., 618 N.E.2d 10, 12, *trans. denied.* On appeal, a trial court's grant of summary judgment is "clothed with a presumption of validity." *Department of Revenue v. Caylor–Nickel Clinic, P.C.* (1992), Ind., 587 N.E.2d 1311, 1312–13.

## A. TIMELINESS OF THE DAMAGES LETTER

■ Figg first argues that the trial court erred in denying his summary judgment motion and granting Bryan Rental's because Bryan Rental failed to send a damages letter to Figg in compliance with Ind.Code 32–7–5–1 *et seq.* We disagree.

Ind.Code 32–7–5–1 through –19 concern the duties of landlords to return security deposits to tenants. The provisions most relevant to our decision, which are found in IC 32–7–5–12 through –16, provide:

32–7–5–12 (a) Upon *termination of the rental agreement,* all of the security deposit held by the landlord shall be returned to the tenant, except for any amount applied to:

(1) The payment of accrued rent;

(2) The amount of damages that the landlord has or will reasonably suffer by reason of the tenant's noncompliance with law or the rental agreement; and

(3) Unpaid utility or sewer charges that the tenant is obligated to pay under the rental agreement;

all as itemized by the landlord in a written notice delivered to the tenant together with the amount due within forty-five days after *termination of the rental agreement and delivery of possession.* The landlord is not liable under this subsection until supplied by the tenant with a mailing address to which to deliver the notice and amount prescribed by this subsection. Unless otherwise agreed, the tenant is not entitled to apply a security deposit to rent.

(b) If the landlord fails to comply with subsection (a), the tenant may recover all of the security deposit due the tenant and reasonable attorney's fees.

(c) This section does not preclude the landlord or tenant from recovering other damages to which either is entitled.

(d) The owner of the dwelling unit at the time of the termination of the rental agreement is bound by this section. (emphasis added).

32–7–5–13. A security deposit may be used only for the following purposes:

(1) To reimburse the landlord for actual damages to the rental unit or any ancillary facility that are not the result of ordinary wear and tear expected in the normal course of habitation of a dwelling.

(2) To pay the landlord for all rent in arrearage under the rental agreement, and rent due for premature termination of the rental agreement by the tenant.

(3) To pay for the last payment period of a residential rental agreement where there is a written agreement between the landlord and the tenant that stipulates the security deposit will serve as the last payment of rent due.

(4) To reimburse the landlord for utility or sewer charges paid by the landlord that:

---

[3]. We note that the trial court's summary judgment order contains detailed and helpful findings of fact and conclusions of law. However, "Special findings are not required in summary judgment proceedings and are not binding on appeal." *Watters v. Dinn* (1994), Ind.App., 633 N.E.2d 280, 285, *trans. denied.*

(A) Are the obligation of the tenant under the rental agreement; and

(B) Are unpaid by the tenant.

32–7–5–14. In case of damage to the rental unit or other obligation against the security deposit, the landlord shall mail to the tenant, within forty-five (45) days *after the termination of occupancy*, an itemized list of damages claimed for which the security deposit may be used as provided in section 13 [IC 32–7–5–13] of this chapter, including the estimated cost of repair for each damaged item and the amounts and lease on which the landlord intends to assess the tenant. The list must be accompanied by a check or money order for the difference between the damages claimed and the amount of the security deposit held by the landlord. (emphasis added).

32–7–5–15. Failure by the landlord to comply with the notice of damages requirement within the forty-five (45) days *after the termination of occupancy* constitutes agreement by the landlord that no damages are due, and the landlord must remit to the tenant immediately the full security deposit. (emphasis added).

32–5–7–16. A landlord who fails to provide a written statement within forty-five (45) days of *termination of the tenancy* or the return of the appropriate security deposit is liable to the tenant in an amount equal to the part of the deposit withheld by the landlord, plus reasonable attorney's fees and court costs. (emphasis added).

Figg directs us to Ind.Code 32–7–5–14 and 15, and argues that he vacated the premises on March 27, and that his vacation triggered the 45 day period.[4] Figg further argues that Bryan Rental was required to mail its damages letter within 45 days of March 27. Bryan Rental agrees that Figg vacated the premises on March 27; however, it argues that the statute is ambiguous because the "[forty-five day] notice provisions of the Security Deposit statute do not clearly articulate what event triggers the 45 day period." Bryan Rental's Brief, p. 6. Bryan Rental argues that we should interpret the 45 day notice period as being triggered by the termination of the rental agreement, not the termination of the tenant's occupancy. Thus, according to Bryan Rental, Figg's lease did not terminate until April 14, 1992, the last day for which Figg paid rent.

We agree with Bryan Rental that the statute is ambiguous because it does not identify what event triggers the 45 day period.[5] The interpretation of a statute is a question of law to be decided by this court. *One 1968 Buick, 4 Door v. State* (1994), Ind.App., 638 N.E.2d 1313, 1316. In interpreting statutes, it is this court's objective to ascertain and give effect to the intent of the legislature.

4. In support of his argument, Figg cites *Skiver v. Brighton Meadows* (1992), Ind.App., 585 N.E.2d 1345, for the proposition that a "landlord is precluded from receiving damages from a tenant for a tenant's breach of a rental agreement by premature termination in the event the landlord failed to provide the tenant with an itemization of accrued rent within forty-five (45) days of tenant's *vacation of the premises*." (emphasis added). Figg's Brief, p. 12. *Skiver* does not stand for this proposition. In *Skiver*, the tenant prematurely terminated the lease agreement by vacating the premises, and the landlord failed to send him an itemized list of damages for which his security deposit was being held. This court held that the landlord was "required to send [Skiver] a letter itemizing the accrued rent due to his premature *termination of the rental agreement*." *Id.* at 1347. (emphasis added).

5. Professor Krieger has also noted this ambiguity.

"One problem not addressed by the court is the variation in the wording of the sections of the Act with regard to when the forty-five day period for giving notice to the tenant begins to run. Under section 12(a) the forty-five day period begins upon "termination of the rental agreement and delivery of possession." In sections 14 and 15 it begins at the "termination of occupancy," and in section 16 it begins at "termination of the tenancy." If written notice must be given to the tenant within forty-five days after termination of occupancy, then it is possible that the landlord would be required to give notice within forty-five days of the abandonment of the premises by the tenant. On the other hand, if the written notice is not required until forty-five days after "termination of the rental agreement" or "termination of the tenancy," then it can be argued that the unilateral action of the tenant in vacating the premises prematurely should not start the forty-five day period running. Non-payment of rent or abandonment by the tenant does not automatically terminate a rental agreement." (footnotes omitted). Walter Krieger, *1992 Developments in Indiana Property Law,* (1993), 26 Ind.Law Rev. 1113, 1137.

St. Anthony Medical Center v. Smith (1992), Ind.App., 592 N.E.2d 732, 739, trans. denied. In giving effect to the legislative intention, the objects and purposes of the statute in question must be considered, as well as the effect and consequences of such interpretation. Holmes v. Review Bd. of Ind. Employment Sec. Div. (1983), Ind.App., 451 N.E.2d 83, 86. We construe statutes to avoid an absurd result or a result that the legislature, as a reasonable body, could not have intended. Guinn v. Light (1990), Ind., 558 N.E.2d 821, 823.

Here, if the 45 day period begins to run when the tenant terminates his occupancy, then the statutory protection could be abused by tenants seeking to abandon the premises and escape liability for rent owed. We agree with Bryan Rental that the "tenant should not be able to abandon the property, continue paying rent, and 45 days later claim that the landlord cannot recover rent owed because the landlord failed to send the damages letter within 45 days of abandonment." Bryan Rental's Brief, p. 8.

We thus conclude that where a tenant vacates the premises and the lease agreement terminates at a later date, the 45 day period does not commence until the date that the lease terminates. In addition, we note that Judge Staton reached a similar result in Mileusnich v. Novogroder Co., Inc. (1994), Ind.App., 643 N.E.2d 937, wherein he stated that "[b]ecause termination is key under the Security Deposits Statute, our first inquiry must be whether the lease actually terminated and if so, when." [6] Id. at 939. (emphasis added).

■ Having determined that it is the termination of the lease agreement which triggers the 45 day notice provision, we must next determine when the lease terminated in this case. Judge Staton recently analyzed the law in this area in Mileusnich:

"A surrender of tenancy is a yielding of the tenancy to the owner of the reversion or remainder, wherein the tenancy is submerged or extinguished by the agreement. Surrender may either be express or by

operation of law. A surrender will arise by operation of law when the parties to a lease do some act inconsistent with the subsisting relation of landlord and tenant as to imply they have both agreed to consider the surrender as effectual. Mere yielding of the premises by the tenant to the landlord does not constitute acceptance or surrender. There must be some decisive, unequivocal act by the landlord which manifests the lessor's acceptance or the surrender. Surrender and acceptance will be determined on a case by case basis by examining the acts of the respective parties in each case." (citations omitted).

Mileusnich, at 939.

This court has previously examined a variety of factors when determining whether there has been a surrender and acceptance. In Grueniger Travel Service of Ft. Wayne, Indiana, Inc. v. Lake County Trust Co. (1980), Ind.App., 413 N.E.2d 1034, 1038, reh'g denied, we determined that the mere acceptance of keys by the landlord did not amount to the landlord's acceptance of surrender. In Mileusnich, supra, the tenant argued that the lease terminated on August 11, 1993, when he tore up the lease and declined to take possession of the premises. The landlord argued that the lease did not terminate until August 31, 1994, as agreed in the lease agreement, and that the landlord never accepted the tenant's surrender. This court noted that the landlord did not initiate any contact with the tenant after the tenant's August 11, surrender. The landlord did not send the tenant any rental notices or any other material evidencing a continued obligation under the lease, and the landlord relet the premises after receiving a letter from the tenant. This court found that the tenant surrendered the premises when he tore up the lease, and that the landlord accepted this surrender when it relet the premises in mid-September. "Accordingly, the lease agreement terminated on the day that the landlord relet the premises." Id. at 940.

---

6. Although the facts in Mileusnich are distinguishable from the facts before us because the Mileusnich tenant never took possession of the premises, this distinction is immaterial in our analysis.

Here, Figg's attorney sent the landlord, Bryan Rental, Figg's front door and mailbox keys on March 27. Three days later, Figg's attorney sent a letter to David Kamen, Bryan Rental's president, indicating that Figg's vacation of the premises was permanent, and that he would not be returning for the remainder of the lease. Kamen then telephoned Figg and requested that he continue the lease agreement. Kamen's telephone call to Figg was not a "decisive, unequivocal act by the landlord which manifest[ed] [his] acceptance of Figg's surrender." In fact, as a result of Kamen's phone call, Figg agreed to continue his lease payments until the lease term ended or until a subtenant could be found. Figg paid the rent for the period from March 14, 1992 to April 14, 1992 on April 13, 1992. On May 22, 1992, Figg's attorney sent Bryan Rental a demand letter stating that Figg had vacated the apartment on March 27, 1992, and that he was no longer liable for rent payments. In response, Bryan Rental sent Figg a written accounting of his security deposit on May 26, 1992.

■ We conclude that Figg surrendered the premises when he stopped paying rent in accordance with the lease agreement, and that Bryan Rental accepted this surrender when it sent Figg the May 26, 1992 damages letter. Accordingly, the lease agreement terminated on the day that Bryan Rental responded to Figg's demand letter by sending him an accounting of his security agreement. Bryan Rental's damages letter was timely because it was sent within 45 days of the termination of the lease agreement. Therefore, the trial court did not err in granting Bryan Rental's summary judgment motion and denying Figg's.

### B. SUFFICIENCY OF THE DAMAGES LETTER

Figg further argues that even if the damages letter which Bryan Rental sent to Figg was timely, the trial court erred because the letter does not adequately itemize the damages for which Figg is responsible in compliance with Ind.Code 32–7–5–12 and 14, and *Duchon v. Ross* (1992), Ind.App., 599 N.E.2d 621. Again, we disagree.

Ind.Code 32–7–5–12 provides that upon termination of a rental agreement, the landlord must return the tenant's security deposit unless the landlord applies it to one of the tenant's obligations enumerated in the statute. When the landlord retains the security deposit to cover one or more of the tenant's obligations, the landlord must send a written notice to the tenant, *itemizing* the tenant's obligations. Ind.Code 32–7–5–14 provides that the itemized list must include "the estimated cost of repair for each damaged item and the amounts and lease on which the landlord intends to assess the tenant."

In *Duchon, supra*, the landlord's letter to the tenant stated in pertinent part as follows:

"In response to your letter of February 27, 1991, please be advised that I have taken the following actions:

3) The carpeting in the dining room is filthy and needs to be shampooed. This cost will be charged back to you.

4) Because the locks were re-keyed by an apparently unknown vandal while the property was still under your control ... you are responsible for the necessity of re-keying all of the locks.

6) The washer and dryer Mr. Harris had purchased are no longer in the residence. Do you have knowledge of where these were taken?

7) The backyard has been destroyed by a car continually using it as a parking lot during inclement weather and will need to be reseeded and restored.

Once the costs associated with the above items are determined, you will receive a final accounting."

*Duchon*, 599 N.E.2d at 624.

This court found that:

"Ross's letter is plainly inadequate under the statute as the letter provides that costs for repairs had not been determined. Disputes over the costs of repair or the assessment of damages do not relieve the Landlords of the requirement to provide the estimated costs of repair to the Ten-

ants within forty-five days of the termination of the tenancy."

*Id.* at 624-25.

█ In contrast, Bryan Rental's letter to Figg states in pertinent part as follows:

"This notice is sent to you pursuant to our Lease Agreement and the requirements of the statute concerning return of deposits (I.C. 32-5-7)....

Under the Lease Agreement the termination date of the lease is August 14, 1992, for which you owe monthly rent until that date. You have made a security deposit of $295.00 which will be applied as follows: Towards rent remaining unpaid for the period ending August 14, 1992. My records show you have paid the rent due in March and no further rent payments have been made."

R. at 28.

Figg argues that this letter does not meet the requirements of Ind.Code 32-5-7-12 and 14, and *Duchon* because it does not adequately itemize the damages for which Figg is responsible. We disagree. We note that the *Duchon* facts are distinguishable from the facts before us. In *Duchon,* the landlord stated that he planned to keep the tenant's deposit for damages, and he failed to provide the estimated costs of repair. Here, the landlord stated that he planned to keep Figg's deposit for unpaid rent. In this regard, we find *Meyers v. Langley* (1994), Ind. App., 638 N.E.2d 875 to be more instructive. In *Meyers,* the landlord sent the tenant a letter stating that the tenant owed rent payments for May and June of 1991, and the landlord intended to seek an additional $7,789.57 for repairs needed to restore the rental unit to its condition before Meyers' tenancy. The landlord attached an itemized statement of repairs to the letter. This court found that the landlord's letter complied with the statute because it itemized all damages and set forth specific dollar amounts attributable to each, and it notified the tenant that

the landlord was claiming accrued rent for two months. We found that:

"The purpose of the notice provision is to inform the tenant that the landlord is keeping the security deposit and for what reason. It provides the tenant an opportunity to challenge the costs for which the deposit is being used. That purpose has been served here."

*Id.* at 878-79. *See also Raider v. Pea* (1993), Ind.App., 613 N.E.2d 870.[7]

We find that Bryan Rental's letter to Figg also served that purpose. Bryan Rental's letter informed Figg that Bryan Rental was keeping Figg's security deposit and applying it to unpaid rent. This information provided Figg with the opportunity to challenge the costs for which the deposit was being used.

Bryan Rental's letter to Figg complies with Ind.Code 32-7-5-12 and 14. The trial court did not err in granting Bryan Rental's summary judgment motion and denying Figg's.

## II. ATTORNEY FEES

█ Figg asserts that he is entitled to "attorney fees for litigation in bad faith, pursuant to I.C. 34-1-32-1." Figg's Brief, p. 2. We disagree.

Ind.Code 34-1-32-1 states as follows:

"(b) In any civil action, the court may award attorney's fees as part of the costs to the *prevailing party,* if it finds that either party:

(1) Brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2) Continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable or groundless; or

---

7. "The forty-five day notice requirement contained in our Security Deposits statute serves two purposes. As a time limitation, the notice requirement protects tenants from unreasonable delays by their landlords in resolution of claims against their security deposits. Furthermore, by requiring a written, itemized notice, the landlord cannot simply retain the tenant's security deposit without explanation, but must specifically justify any deduction from the deposit for damages." *Raider* at 872-73.

(3) Litigated the action in bad faith."

(emphasis added).

The statute clearly states that the court may award attorney fees to the *prevailing party*. A party who is granted summary judgment is the prevailing party. *Strutz v. McNagny* (1990), Ind.App., 558 N.E.2d 1103, 1110, *trans. denied.* Here, the trial court granted Bryan Rental's summary judgment motion and denied Figg's. We are affirming the trial court. Accordingly, Bryan Rental is the prevailing party in this action. As a result, the issue of awarding Figg attorney fees is moot and need not be addressed. *See, Coplen v. Omni Restaurants, Inc.* (1994), Ind.App., 636 N.E.2d 1285.

■ Furthermore, even if we were to address this issue, we note that this court has previously stated as follows:

> "[T]he absence of good faith is bad faith, but bad faith is not simply bad judgment or negligence. Rather, it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity. It is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will."

*Watson v. Thibodeau* (1990), Ind.App., 559 N.E.2d 1205, 1211 (quoting *Young v. Williamson* (1986), Ind.App., 497 N.E.2d 612, 617).

Because there is no evidence in the record that Bryan Rental was "affirmatively operating with furtive design or ill will," Figg is not entitled to attorney fees pursuant to Ind. Code 34-1-32-1.

Affirmed.

CHEZEM and SULLIVAN, JJ., concur.