Michelle **FLOYD**, Appellant–Plaintiff,

v.

**ROLLING RIDGE APARTMENTS,**
Appellee–Defendant.

No. 53A01–0201–CV–41.

Court of Appeals of Indiana.

May 29, 2002.

---

John M. Irvine, Emily K. Muceus, Student Legal Services, Bloomington, IN, Attorneys for Appellant.

John W. Richards, Stephen G. Miller, Bunger & Robertson, Bloomington, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF CASE

Appellant–Plaintiff, Michelle Floyd (Floyd), appeals the trial court's grant of summary judgment in favor of Appellee–Defendant, Rolling Ridge Apartments, (RRA).

We affirm.[1]

### ISSUES

Floyd raises one (1) issue on appeal, which we restate as follows: whether the trial court properly granted RRA's Cross–Motion for Summary Judgment.

### FACTS AND PROCEDURAL HISTORY

On July 7, 1997, Floyd and RRA entered into a lease agreement for a property located at 1200 Rolling Ridge, Apartment 401, in Bloomington, Indiana (Apartment 401). The original lease began on August 15, 1997 and ended on August 10, 1998. The parties to the lease were RRA, Floyd, and Liz Morrin (Morrin). Floyd paid the security/damage deposit of $1,065.00 to RRA. She was the only tenant to pay the security/damage deposit. At the commencement of the lease, Floyd and Morrin signed a move-in inspection of the premis-es. At the expiration of this lease, Morrin elected to move out. The terms of the original lease stated that Floyd and Morrin were jointly and severally liable. The original lease also stated, "[t]o renew this lease agreement, a new lease agreement must signed." (Appellant's App. p. 47).

On June 15, 1998, Floyd renewed her lease for Apartment 401. The lease commenced on August 11, 1998 and terminated on August 11, 1999. The lease document indicated "Renewal" on the margin of the document. RRA did not require an additional security deposit from Floyd. Further, RRA did not adjust the monthly rental payment for the apartment. Instead, the renewal agreement noted that the original security/damage deposit was transferred from the original lease term. The renewal agreement named two (2) different cotenants, Jessica Floyd (Jessica) and Lori Curdes (Curdes); Floyd remained on the lease as a tenant. The terms of the renewal agreement stated that Floyd and her cotenants were jointly and severally liable.

After signing a move-out inspection of the premises, Floyd moved out of Apartment 401 on August 6, 1999. The renewal lease officially terminated on August 11, 1999. On September 14, 1999, RRA's property manager, Barbara Black (Black), sent a letter to Floyd and her cotenants stating the itemized charges against the security/damage deposit. The settlement statement detailed $1,616.54 in charges made against Floyd's security/damage deposit, and indicated that Floyd and her cotenants owed a balance of $551.54 to RRA. Floyd and her cotenants received the letter and settlement statement on September 17, 1999, via registered mail.

On March 2, 2000, Floyd filed a Complaint against RRA, alleging that RRA had

---

**1.** The Appellant–Plaintiff's Petition for Oral Argument is hereby denied.

an obligation under the Indiana Security Deposit Statute to provide her with an accounting of damages at the expiration of the original lease. Further, the Complaint alleged that any possible waiver of this right to an accounting was ineffective because it was not voluntarily or knowingly waived. The Complaint also disputed RRA's calculation of the damages to Apartment 401. On April 24, 2000, RRA filed Defendant's Answer to Plaintiff's Complaint and Counterclaim.

Floyd interpreted RRA's answer to Counts I and II of her complaint as a motion to dismiss for failure to state a claim. Consequently, on June 29, 2000, Floyd filed a Motion for Summary Judgment. On August 29, 2000, RRA filed its Response to Plaintiff's Motion for Summary Judgment. RRA also filed a Cross–Motion for Summary Judgment on the same date. On January 9, 2001, a hearing was held on the motions for summary judgment. On May 29, 2001, the trial court issued an order, finding that an accounting was not due and stating:

> [T]he August 15, 1997 lease was renewed for a second one year term, consecutive to the first year, and that plaintiff's security deposit remained in compliance with the terms of the only lease; there was no second independent lease; the court interprets that parties' intent based upon their acts regarding the handling of the security deposit; the security deposit was timely tendered and both parties executed a renewal lease, pursuant to the terms of the lease executed on August 15, 1997, with the notation that the security deposit was transferred.

(Appellant's App. p. 10).

On September 18, 2001, a bench trial was held on the remaining issue of the calculation of damages to the apartment. On January 4, 2002, the trial court issued its Findings of Fact, Conclusions of Law,

and Judgment that incorporated the May 29, 2001 Order and found for RRA in the amount of $404.74 in damages, $550.00 in attorney's fees, and $64.80 in interest.

Floyd now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

In reviewing the propriety of a trial court's ruling of summary judgment, we apply the same standard as the trial court. *Turley v. Hyten,* 751 N.E.2d 249, 251 (Ind. Ct.App.2001). We do not reweigh the evidence designated by the parties. *Id.* Instead, we liberally construe the evidence in the light most favorable to the non-moving party. *Schoknecht v. Hasemeier,* 735 N.E.2d 299, 301 (Ind.Ct.App.2000). Summary judgment is appropriate only if the pleadings and evidence show: 1) the absence of a genuine issue of material fact, and 2) the moving party is entitled to judgment as a matter of law. *Id.* at 301–02. On appeal, summary judgment will be affirmed if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court. *Figg v. Bryan Rental, Inc.,* 646 N.E.2d 69, 71 (Ind.Ct.App.1995), *trans. denied.* A trial court's grant of summary judgment is "clothed with a presumption of validity." *Id.*

The construction of a written contract is a question of law for which summary judgment is particularly appropriate. *Smyrniotis v. Marshall,* 744 N.E.2d 532, 534 (Ind.Ct.App.2001). A lease is construed in the same manner as any other contract. *Stout v. Kokomo Manor Apartments,* 677 N.E.2d 1060, 1064 (Ind.Ct.App.1997). "If a contract is ambiguous solely because of language used in the contract and not because of extrinsic facts, then construction of the contract is purely a question of law to be determined

by the court." *Francis v. Yates*, 700 N.E.2d 504, 506 (Ind.Ct.App.1998).

## II. Termination Date of the Rental Agreement

Floyd argues that the trial court erred in granting summary judgment in favor of RRA. Specifically, Floyd contends that two (2) separate and consecutive leases were executed between the parties. RRA, on the other hand, asserts that the original lease was extended for an additional one (1) year term, pursuant to a provision in the original lease.

Ind.Code § 32–7–5–7 provides that a "rental agreement" means all of the agreements, together with any subsequent modifications, embodying the terms and conditions concerning the use and occupancy of a rental unit. In the present case, the original lease outlined the terms and conditions under which Floyd and Morrin rented the premises of Apartment 401. Under the terms and conditions of the lease, Floyd and Morrin were jointly and severally liable. Further, the original lease expressly stated that "[t]o renew this lease agreement, a new lease agreement must be signed." (Appellant's App. p. 47).

█ Here, a common thread of privity exists between the parties. (*i.e.*, the contractual relationship between RRA and Floyd). The rental agreement between RRA and Floyd was comprised of the original lease and the modifying renewal lease. On June 15, 1998, Floyd executed what appears to be an identical lease for Apartment 401. Under the terms of the renewal lease, the basic terms of the original lease were unchanged. Floyd remained jointly and severally liable for damages to the apartment under the terms of both the original lease agreement and the renewal lease agreement. The renewal lease changed Floyd's cotenants from Morrin to Jessica and Curdes, but all of the other rights and obligations remained the same

as to the relationship between Floyd and RRA.

Moreover, the renewal lease expressly stated that the security/damage deposit paid upon execution of the original lease continued during the extension of the lease term. This express transfer of the security/damage deposit reveals the intent of the parties to modify, rather than terminate and recreate, the rental agreement. It is our determination that Floyd agreed to the transfer of her security/damage deposit by her conduct. The renewal lease that Floyd signed included the notation "transfer with lease" in regard to the required damage deposit.

Accordingly, it is apparent that Floyd consented to a continuation of the existing rental agreement by allowing the transfer of the security/damage deposit to the renewal lease. Therefore, the renewal lease was a modification of the existing lease and should be construed along with the original lease document as the entire "rental agreement" under I.C. § 32–7–5–7. Thus, the lease agreement between Floyd and RRA commenced on August 15, 1997, and terminated on August 11, 1999.

█ Termination of a lease agreement occurs when the tenant surrenders the tenancy and the landlord accepts the tenant's surrender. *Rueth v. Quinn*, 659 N.E.2d 684, 688 (Ind.Ct.App.1996), *trans. denied*. A surrender of tenancy is a yielding of the tenancy to the owner of the reversion or remainder, wherein the tenancy is submerged and extinguished by agreement. *Mileusnich v. Novogroder Co., Inc.*, 643 N.E.2d 937, 939 (Ind.Ct.App. 1994), *reh'g denied*. A surrender may be express or by operation of law. *Id.* By examining the actions of the respective parties, surrender and acceptance is determined on a case-by-case basis. *Id.*

Turning to the present case, Floyd's actions indicate that she did not intend the

rental agreement to terminate until August 11, 1999. Floyd's failure to surrender the premises, at the expiration of the original lease, serves as an indication of her intent to remain in the apartment and extend the original rental agreement for an additional year. The record clearly reflects that Floyd continuously occupied Apartment 401 from the date of the move-in inspection on August 15, 1997, to the date of the move-out inspection on August 6, 1999. Floyd failed to provide RRA with notice of her intent to discontinue occupancy or terminate her obligations under the rental agreement until she moved out on August 6, 1999. The record also shows that Floyd paid her share of the rent through August 11, 1999.

As stated above, the termination of a lease agreement occurs when the tenant surrenders the tenancy and the landlord accepts the tenant's surrender. *Rueth,* 659 N.E.2d at 688. Here, Floyd surrendered her tenancy of Apartment 401 on August 6, 1999, and RRA accepted her surrender on August 11, 1999.

With the above in mind, we find that the original lease signed on August 15, 1997, was renewed for a second one (1) year term, consecutive to the first year, and terminated on August 11, 1999. As a result, it is our determination that Floyd's security/damage deposit remained in compliance with the terms of the lease.

### III. Security/Damage Deposit

Next, we must determine whether RRA complied with the Indiana Security Deposit statutes after termination of the lease occurred.

▮ Indiana law is clear on the responsibilities of a landlord at the termination of a lease. Upon termination of a rental agreement, the landlord must return all of the security deposit to the tenant, minus any charges against the security deposit, for accrued rent, damages, or unpaid utilities, within forty-five (45) days after termi-

nation of the agreement and delivery of possession. I.C. § 32-7-5-12. This statute clearly states that the landlord is responsible, upon termination of a lease, for providing tenants with an accounting of the security deposit. In fact, an itemized list of the damages claimed by the landlord must be delivered to the tenant within forty-five (45) days after the termination of occupancy. I.C. § 32-7-5-14. Failure to comply with the notice of damages requirement within the forty-five (45) days after the termination of occupancy constitutes an agreement by the landlord that no damages are due, and the tenant is entitled to the full security deposit. I.C. § 32-7-5-15. When applying the Indiana Security Deposit statutes, we assume "that the legislature is aware of the common law and intends to make no change therein beyond its declaration either by express terms or unmistakable implication." *Hinshaw v. Board of Commissioners of Jay County,* 611 N.E.2d 637, 639 (Ind.1993).

As discussed above, the rental agreement between Floyd and RRA terminated on August 11, 1999. Therefore, under I.C. § 32-7-5-12, RRA's obligation to return the security deposit to Floyd was not triggered until she surrendered the apartment. Floyd moved out of Apartment 401 on August 6, 1999. She signed a move-out inspection report and provided RRA with her forwarding address on the same date. Therefore, the forty-five (45) day notice requirement was triggered on August 11, 1999, after Floyd surrendered her tenancy and RRA accepted it.

On September 14, 1999, RRA sent a written letter with an itemized damage deposit settlement statement on Apartment 401 to Floyd and her cotenants at their forwarding address. Floyd received the letter and settlement statement on September 17, 1999, via certified mail. I.C. § 32-7-5-12 states that the obligation

of the landlord does not accrue until the termination of the "rental agreement." As mentioned above, the rental agreement between Floyd and RRA consisted of the original lease, together with the modifications in the terms and cotenants, and it did not officially terminate until August 11, 1999.

Accordingly, we find that the rental agreement between Floyd and RRA consisted of the original lease and the renewal lease. The rental agreement terminated on August 11, 1999. Floyd occupied the apartment from August 15, 1997 to August 6, 1999, the day she surrendered possession of the apartment. RRA accepted the surrender on August 11, 1999. RRA provided Floyd with an itemized statement of charges against the security/damage deposit within forty-five (45) days of the surrender of the apartment and termination of the rental agreement. Therefore, the trial court properly granted summary judgment in favor of RRA. *See Figg*, 646 N.E.2d at 71.

## CONCLUSION

Based on the foregoing, we conclude that the trial court properly granted RRA's Cross–Motion for Summary Judgment. We also conclude that the accounting of damages was rendered timely and Floyd's security/damage deposit was properly retained by RRA under the Indiana Security Deposit Statutes.

Affirmed.

MATTINGLY–MAY, J., and VAIDIK, J., concur.