**FOR PUBLICATION**



FILED
Sep 19 2013, 5:44 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**ROBERT R. FAULKNER**
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**JAMES D. JOHNSON**
**JOSEPH H. LANGERAK, IV**
Rudolph, Fine, Porter & Johnson, LLP
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LILY, INC. d/b/a WEINBACH CAFETERIA and FERNANDO TUDELA, | ) ) ) ) | |
| Appellants-Defendants, | ) ) | |
| vs. | ) ) | No. 82A05-1209-PL-459 |
| SILCO, LLC, | ) ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VANDERBURGH CIRCUIT COURT
The Honorable Carl A. Heldt, Judge
Cause No. 82C01-0904-PL-151

**September 19, 2013**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Lily, Inc., d/b/a Weinbach Cafeteria and Fernando Tudela (collectively, the "Appellants") appeal the trial court's September 6, 2012 order granting summary judgment to Silco, LLC ("Silco"). The Appellants raise seven issues which we consolidate and restate as whether the court erred in granting Silco's motion for summary judgment. We affirm in part, reverse in part, and remand.

FACTS AND PROCEDURAL HISTORY

In 2003, Four O Three, Inc., and David Nelson, the "owner, member and sole unit holder" of Silco, signed a lease agreement (the "Lease") dated March 25, 2003, in which Four O Three, Inc. became the tenant of certain property in the Weinbach Shopping Center in Evansville.[1] Appellants' Appendix at 121. In August 2004, Tudela purchased the Weinbach Cafeteria for an amount between $90,000 and $100,000.

On August 13, 2004, Four O Three, Inc. and Tudela signed an "Assignment and Assumption of Building Lease" (the "Assignment") related to "a certain Lease Agreement with Silco, LLC, dated March, 25, 2003, for the lease of property commonly described as 1 N. Weinbach, Evansville, Indiana." Id. at 78. The Assignment stated in part that Four O Three, Inc. assigned to Tudela all of its right, title, and interest in the Lease. That same day, Silco and Tudela entered into a "Consent to Assignment of Lease Agreement and Release" (the "Consent") in which Silco consented to the assignment of the Lease, and Tudela agreed to be responsible for the upkeep, maintenance, and repairs of the area inside the building on the leased premises from the top of the stairs to the cafeteria, the area from the freight elevator to the entrance of the main service corridor,

---

[1] Under the heading "PREMISES," the Lease states "As shown on Exhibits A and A-1," but the record does not contain a copy of Exhibits A and A-1. Appellants' Appendix at 80.

2

and the 700 square foot common area outside of the building in front of the drive-through counter. Id. at 79. That same day, Tudela and Silco signed a Mortgage in which Tudela granted a security interest in certain properties to Silco, and the Mortgage stated: "THIS MORTGAGE IS GIVEN TO SECURE (1) PAYMENT OF THE INDEBTEDNESS AND (2) PERFORMANCE OF ALL OBLIGATIONS OF GRANTOR UNDER THIS MORTGAGE AND THE LEASE." Id. at 108.

Under the Lease, monthly rent was due and payable in advance, and by the end of July 2006, Tudela owed Silco $5,892.75 and was in default of the Lease from that date forward. In September 2006, Tudela and Nelson had a conversation in which Tudela described his business activities as struggling and agreed to perform some work around the complex in order to reduce his rent. The agreement included picking up trash from the parking lot, emptying the trash on a daily basis, and cleaning the common areas inside the building containing the cafeteria. This agreement continued through June 2007.

In October 2006, Silco leased other space in the Weinbach Shopping Center to a blood plasma center. In a fax dated August 2007, Tudela informed Nelson of problems with respect to the patrons of the blood plasma center. Tudela indicated that the blood plasma center had a negative effect on the cafeteria business. Specifically, Tudela wrote:

> We have customers that have call [sic] us and tell us they are not coming because of the Blood Plasma Center. They do not feel safe and that [e]ven when they try to come in there are no spaces to park other than spaces near Wesselmans which are very unrealistic for Senior Citizens to park that far away. I have documentation of no parking available, I have a video of people in the parking lot waiting with their trunk open and there [sic] stereo playing loud while waiting their turn to go into the Blood Bank. People not only congregate outside the door but also in their cars taking up parking spaces. I have called the police many times because they park their cars in the handicapped parking spaces. . . . My business decreased substantially

3

after the opening of this facility. . . . I will enclose the Cafeteria sales the year prior Blood Plasma Center and the sales after. You will see a significant difference.

Id. at 434-435.

In a letter dated March 6, 2008, and addressed to Tudela, Nelson stated that the letter would serve as default notice for failure to pay rent and charges totaling $63,323.82. The letter stated that the "charges must be paid within 5 business days of receipt of this letter to avoid termination and possibly eviction as provided in the lease." Id. at 104. A document attached to the letter contained a "Recap of Account" and listed the balance due from Tudela beginning on May 1, 2007. Id. at 29. Later that month, Tudela met with Nelson and discussed reducing the rent, and Nelson agreed to reduce the rent by half.

In September 2008, Silco locked Tudela out of the premises for nonpayment of rent. Nelson spoke to Tudela and said: "[Y]ou owe me a lot of money. . . . [W]e're taking over. . . . [W]hat we're going to do . . . we're going to have your equipment appraised, and if you owe me any money, you know, you're going to settle up with me. If I owe you any money, we're going to get settled up." Id. at 406. Tudela worked at the cafeteria for three days and helped with the transition to "make sure that everything went smoothly." Id. at 389. During 2008 and 2009, Nelson "owned and operated a restaurant." Id. at 188.

In a letter addressed to Nelson and dated October 8, 2008, Tudela's attorney wrote that Tudela had informed him that Silco had taken possession of the Weinbach Cafeteria. The letter stated: "Mr. Tudela also advised me that you have reached an agreement to

4

resolve this matter by applying the value of the assets in the Weinbach Cafeteria to the rental arrearage. If the value of the assets exceeds the rental arrearage, you will pay the excess value to Mr. Tudela." Id. at 193. The letter also mentioned receiving appraisals for the equipment and concluded: "Mr. Tudela needs to obtain from you as soon as possible your calculation as to the amount of rental arrearage. As soon as you can provide this number, a meeting could be scheduled to determine the final calculation of what is owed for the assets of the Weinbach Cafeteria." Id. at 194.

In a letter dated December 12, 2008, Tudela's attorney wrote Nelson again indicating that he had not received a response to his October 8, 2008 letter. Tudela's attorney again requested an accounting "of the back rent and any other expenses which you claim to be owed to you by Fernando Tudela." Id. at 195. At one point during January and February 2009, Tudela drove by the Weinbach Cafeteria and witnessed Nelson and his employees removing restaurant equipment. Silco hired Sohn & Associates ("Sohn") to consign and auction property of Tudela found in the Weinbach Cafeteria. On March 23, 2009, Sohn sold the equipment, and the total sales revenue less expenses and Sohn's commission amounted to $43,173.59.

On April 20, 2009, Silco filed a complaint for breach of lease agreement, ejectment, foreclosure of Mortgage, and conversion. On July 8, 2009, Appellants filed their Answer and Affirmative Defenses.[2] The Appellants also filed a counterclaim

---

[2] The Appellants set forth the following defenses:

1.  The Plaintiff failed to mitigate damages which completely or partially bar any recovery by Plaintiff herein.
2.  Defendants are entitled to offsetting amounts which constitute a complete or partial bar to recovery by Plaintiff of its claim.

5

alleging breach of contract and conversion and requesting an accounting. On August 31, 2009, Silco filed an answer to Appellants' counterclaim.

On June 6, 2012, Silco filed a motion for summary judgment and to foreclose the Mortgage. Silco alleged that the Appellants "failed to make payments required by promissory notes, the indebtedness under the Assignment and Assumption of Lease which is secured by the Mortgage" and that Silco was entitled to judgment of foreclosure on the Mortgage and judgment on the amount owed pursuant to the Assignment. Id. at 60.

On August 13, 2012, the Appellants filed a response to Silco's motion for summary judgment. Under the heading "STATEMENTS/ISSUES OF FACT WHICH PRECLUDE SUMMARY JUDGMENT," the Appellants listed twenty-six items and designated the deposition of Tudela referring to specific portions of the deposition in its issues of fact. Id. at 172-176. That same day, the Appellants filed a motion to publish the deposition of Tudela and argued that Silco "took said deposition, has designated same in its motion for summary judgment, would be in possession of the original and should be

---

3. The Plaintiff is barred from recovery of its claim by its election of remedies to assume control of the Weinbach Cafeteria on September 16, 2008.
4. Plaintiff and Defendants had agreed on procedures to divide the assets of the business which bars Plaintiff's recovery completely or partially.
5. Defendants plead the doctrines of estoppel and waiver as a complete or partial bar to any recovery by Plaintiff.
6. Defendants plead discharge by performance as a complete or partial bar to any recovery by Plaintiff herein.
7. Defendants plead that Plaintiff has been fully compensated for its losses.
8. Defendants affirmatively plead that Plaintiff is discharged completely or partially by its own breach of the lease agreement.

Appellants' Appendix at 49-50.

directed to tender same to the Court for use in its consideration of [Silco's] Motion for Summary Judgment." Appellants' Supplemental Appendix at 1.

On August 28, 2012, Silco filed a reply to Appellants' response and a supplemental designation of evidence. On August 29, 2012, the Appellants filed a notice of filing deposition. On September 4, 2012, the court held a hearing on Silco's motion for summary judgment.[3]

On September 6, 2012, the court granted summary judgment to Silco and against the Appellants on their counterclaim. The court's order states, in part:

> IT IS FURTHER ORDERED Defendants breached the Lease.
>
> IT IS FURTHER ORDERED by the Court that SILCO is given a personal judgment against the Defendants, jointly and severally, in the amount of $183,605.52, comprised of $236,661.86[4] minus the amount in Sohn & Associates' escrow for sale of Weinbach Cafeteria property in the amount of $43,171.59 and minus the credit SILCO has allowed Defendants based on items it has been unable to locate amounting to $3,992.00, and minus payment made by Defendants in the amount of $5,892.75 dated July 13, 2006 which has now been proven as received by SILCO, plus post judgment interest, plus advances by SILCO for real estate taxes, insurance premiums, maintenance costs, attorney and paralegal fees, and all other advances and any additional costs of collection, expenses and disbursements incurred including, but not limited to, attorney fees and costs, Sheriff's Sale costs, environmental studies on the property, disbursements for real estate taxes, appraisals, bankruptcy fees and costs, court costs, and disbursement for hazard insurance premiums which SILCO must pay to preserve the subject property and SILCO's interest and rights therein, all without relief from valuation of appraisement laws.
>
> IT IS FURTHER ORDERED that Sohn & Associates release monies they are holding in their escrow account from the sale of Weinbach

[3] The record does not contain a transcript of the hearing.

[4] We observe that Nelson's affidavit states: "From the beginning of the default under the lease, until May 4, 2012, SILCO has incurred damages in the amount of $236,671.86. The amount due will continue to increase due to interest and attorney fees and monthly late charges." Appellants' Appendix at 123. The amount mentioned in the order is ten dollars less than the amount stated in Nelson's affidavit.

Cafeteria properties in the amount of $43,171.59 to SILCO as of the date of this Order.

*  *  *  *  *

IT IS FURTHER ORDERED by the Court that the mortgage of SILCO, recorded on August 19, 2004, as Document No. 2004R00029044 in the Office of the Recorder of Vanderburgh County, Indiana, be and hereby is, foreclosed as first and prior liens subject to any county real estate tax liens and that equity of redemption of all of the parties herein and all persons claiming under and through them hereby are foreclosed; and that the property specifically described below and all right, title and interest in the claim of the parties hereto and all persons claiming under and through them shall be sold by the Sheriff of Vanderburgh County, Indiana, without relief from valuation and appraisement laws, subject to and in accordance with the applicable laws of the State of Indiana and subject to the provisions hereinafter set forth.

IT IS FURTHER ORDERED by the Court that the Sheriff of Vanderburgh County shall sell the [Defendants'] real estate . . . .

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that in connection with the sale of the Collateral that said property shall be sold as a single unit; the Sheriff of Vanderburgh County shall require the highest bidder to immediately deposit with him cash or a certified or cashier's check, for the full amount of the bid, and, if said deposit is not made, the Collateral shall again be offered for sale at one or more times until said Sheriff has received from the highest bidder the deposit as aforesaid in the full amount of the bid; provided, however, if the highest bidder for the Collateral is SILCO, SILCO, in lieu of making a deposit as aforesaid, will provide for payment of the purchase price by delivering to the Sheriff a receipt in the amount of said bid to be credited against SILCO's judgment herein and by depositing any amount of the bid greater than SILCO's judgment with the Sheriff as aforesaid; and that the Sheriff shall complete the sale of the Collateral by executing and delivering a deed or bill of sale, as the case may be, to the person, firm or corporation making the bid and deposit, if any, on the Collateral and make his return on the order of sale to the Clerk in accordance with statute.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that upon execution by the Sheriff of a deed of conveyance of the Collateral sold by the Sheriff and any bill of sales related to the Collateral, pursuant to this order, and said Collateral not having been previously redeemed by any person entitled thereto, any person who may be in

8

possession of the Collateral or any party thereof upon demand and exhibition of said Sheriff's deed or bill of sale shall forthwith surrender the Collateral to the holder of such deed or bill of sale, and in the event such persons so in possession of the Collateral shall refuse to fully and peacefully surrender possession, the Sheriff shall vacate and/or otherwise take possession of the Collateral and give full and peaceful possession to the purchaser.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that the proceeds derived from the aforementioned sale be applied as follows: (i) to the payment of costs and accruing costs herein existing as of the date of said sale; (ii) payment of any outstanding property taxes on the Collateral that are due and owing and for which the due date has passed as of the date of such sale; (iii) payment to SILCO in the amount of its judgment; and, (iv) the surplus, if any, shall be paid by the Sheriff to the Clerk of this Court for the use of the parties and remaining defendants lawfully entitled thereto.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that a duly certified copy of this judgment and associated decrees under the hand and seal of the Clerk of this Court shall be sufficient to the Sheriff to execute any and all portions of this judgment.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that pursuant to Trial Rule 56(C) there is no just reason for delay and directs entry of judgment in favor of SILCO and this is a final appealable order.

Appellants' Appendix at 13-17.

DISCUSSION

The issue is whether the court erred in granting Silco's motion for summary judgment. Our standard of review for a trial court's grant of a motion for summary judgment is well settled. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); Mangold ex rel. Mangold v. Ind. Dep't of Natural Res., 756 N.E.2d 970, 973 (Ind. 2001). All facts and reasonable inferences drawn from those facts

9

are construed in favor of the nonmovant. Mangold, 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. Id. We must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court. Id. at 974.

Where a trial court enters findings of fact and conclusions thereon in granting a motion for summary judgment, the entry of specific findings and conclusions does not alter the nature of our review. Rice v. Strunk, 670 N.E.2d 1280, 1283 (Ind. 1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions thereon. Id. They merely aid our review by providing us with a statement of reasons for the trial court's actions. Id.

To the extent that the issue requires us to interpret the contracts, we observe that "[i]nterpretation of a contract is a pure question of law and is reviewed de novo." Dunn v. Meridian Mut. Ins. Co., 836 N.E.2d 249, 252 (Ind. 2005); see also Fresh Cut, Inc. v. Fazli, 650 N.E.2d 1126, 1129 (Ind. 1995) (noting that a real estate lease is subject to principles of contract law); Coleman v. Witherspoon, 76 Ind. 285, 287 (1881) ("A mortgage is a contract . . . ."). If a contract's terms are clear and unambiguous, courts must give those terms their clear and ordinary meaning. Id. Courts should interpret a contract so as to harmonize its provisions, rather than place them in conflict. Id. "We will make all attempts to construe the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless." Rogers v. Lockard, 767 N.E.2d 982, 992 (Ind. Ct. App. 2002). "Rules of contract construction and extrinsic evidence may be employed in giving effect to the parties' reasonable expectations." Johnson v.

10

Johnson, 920 N.E.2d 253, 256 (Ind. 2010). "When a contract's terms are ambiguous or uncertain and its interpretation requires extrinsic evidence, its construction is a matter for the fact-finder." Id. When a summary judgment ruling is based upon the construction of a written contract, the trial court has either determined as a matter of law that the contract is not ambiguous or uncertain, or that the contract ambiguity, if one exists, can be resolved without the aid of a factual determination. Pinkowski v. Calument Twp. of Lake Cnty., 852 N.E.2d 971, 981 (Ind. Ct. App. 2006), trans. denied.

A.     Breach of Contract

The Appellants argue that Silco committed "[c]ontractual [s]abotage," that Silco contracted to control and police the common areas, and thus that Silco is responsible for any nuisance it allowed to occur in other tenants' use of the common areas. Appellants' Brief at 15. The Appellants state that "[b]y leasing to a business, the operation of which created a nuisance within the common area parking lot, [Silco] breached the duties it undertook to operate, manage, equip, light and maintain the common areas in a first class attractive condition throughout the lease term." Id. at 17-18. They contend that Silco "breached the lease by allowing the nuisance and was so notified at least seven (7) months prior to its March 2008 notice to Tudela." Id. at 18. The Appellants argue that "[o]ne party may not successfully accuse the other party of failure to perform a contract when the former party has in some manner prevented such performance." Id. (citing Stephenson v. Frazier, 399 N.E.2d 794, 798 (Ind. Ct. App. 1980), trans. denied). The Appellants state further that "[i]t was unrefuted that . . . the Landlord leasing nearby property to a business, the operation of which constituted a nuisance, was the major

11

factor in the inability of the Weinbach Cafeteria to pay rent and Landlord should bear the inevitable foreseeable consequences of its actions in leasing to an entity the operation of which constituted a nuisance." Id.

Silco argues that while the Appellants use the phrase "contractual sabotage," they do not elaborate or cite any cases as to its meaning. Appellee's Brief at 13. Silco contends that "Tudela seems to argue that SILCO had an affirmative obligation to ensure the tenant mix at the center maximized Tudela's revenue; such an obligation is not found in the Lease and does not exist." Id. Silco's position is that the nuisance claim is waived because Tudela never pled a nuisance claim or asserted it as an affirmative defense, and further, that Tudela did not have a right under the Lease to quiet enjoyment because his rent payments were not current prior to Silco renting to the blood plasma center.

The Appellants did not specifically mention nuisance in their answer, affirmative defenses, or counterclaims. Accordingly, we cannot say that the Appellants properly pled nuisance and conclude that they have waived the issue. See Briggs v. Finley, 631 N.E.2d 959, 964 (Ind. Ct. App. 1994) ("A memorandum opposing summary judgment is not a proper place to assert a claim against a defendant."), trans. denied.

Waiver notwithstanding, we observe that the Appellants do not cite to any provision of the Lease or Consent which prohibits Silco from renting to a blood plasma center or place any specific restrictions on parking.[5] The Consent provides that "In consideration of this Assignment, [Tudela] hereby agrees to be responsible for the

---

[5] We note that a rider to the Lease provides that Silco was "prohibited from permitting any other restaurant or retail food service (other than those existing tenants at the Commencement Date of this Lease) from operating within the Shopping Center." Appellants' Appendix at 103.

12

upkeep, maintenance and repairs of the following: a) the area inside the building from the top of the stairs to the cafeteria; b) the area from the freight elevator to the entrance of the main service corridor; and (c) the 700 square foot common area outside of the building, in front of the drive through counter." Appellants' Appendix at 79. Paragraph 32 of the Lease provides that "[a]ll common areas and other common facilities . . . made available by Landlord in or about the Shopping Center shall be subject to the exclusive control and management of Landlord," and defines common areas to include, among other areas, sidewalks and parking areas. Id. at 90. Paragraph 32 of the Lease also states that "Landlord shall operate, manage, equip, light and maintain the common areas in a first class attractive condition throughout the lease term . . . ." Id. The Lease does not define what constitutes a "first class attractive condition," and there is no claim that prior to Tudela's failure to pay rent, Silco was not in compliance with this provision. Further, Paragraph 48 of the Lease provides:

> QUIET ENJOYMENT: If Tenant timely pays the rents reserved and performs all of the other terms, covenants and conditions of this Lease on the Tenant's part to be performed, then Tenant shall peaceably and quietly have, hold and enjoy the Premises during the Lease Term, subject to the terms of this Lease, and to any mortgages, ground or underlying leases, agreements and encumbrances to which this Lease is or may be subordinated.

Id. at 98.

The designated evidence reveals that the Tudela owed Silco $5,892.75 as of July 31, 2006, and that thereafter and until Tudela was locked out of the premises there was always a balance of rents and other obligations due Silco by Tudela. Thus, at the time that the blood plasma center opened in October 2006 and thereafter, Tudela was not in

13

compliance with the rent provisions of the Lease. There is no claim that any breach by Silco occurred prior to this date. Based upon the language in the Lease and the designated evidence, Tudela was not entitled to quiet enjoyment of the premises after he failed to timely pay the rent and did not cure such failure as provided in the Lease. Under the circumstances, we cannot say that there is a genuine issue of material fact on this issue.

B.      Mortgage

The Appellants argue that the Mortgage was void for lack of consideration and that the trial court "apparently based its ruling upon the argument that the mortgage it seeks to foreclose was given as security for the lease on which it is also suing." Appellants' Brief at 14. The Appellants argue that the Lease, riders, and Assignment did not mention a mortgage and that "[a]s the mortgage was not required by Landlord's transaction documents on which Landlord has based its lawsuit, it would have been superfluous and unsupported by consideration and thus it is void." Id. at 15. The Appellants argue "[w]hen executing the 'mortgage' being sued upon by Landlord Tudela mistakenly believed himself to be owner of the properties through the will of his deceased mother believing its provisions to be self effectuating upon her death." Id. at 36. The Appellants contend that "[a]s the ownership of the properties seems to have been in a state of limbo at the time the mortgage was executed, there was arguably no owner to consent to the mortgage and . . . there would likely have been a genuine issue of material fact as to whether it would be enforceable on that basis." Id. The Appellants also assert

that even if the Mortgage was not void then Silco's inequitable conduct bars it from being awarded the equitable remedy of foreclosure.

Silco argues that there are multiple reasons why there is adequate consideration for the Mortgage. Silco points out that Count III of its complaint was titled "Foreclosure of Mortgage" and that the Appellants admitted to the relevant portions of its complaint. Appellants' Appendix at 21. Silco also asserts that the Appellants' lack of consideration argument was made for the first time in opposition to the summary judgment action, and Ind. Trial Rule 8(C) requires that failure of consideration be pled as an affirmative defense. Silco further contends that the Appellants' arguments that Tudela lacked standing to execute the Mortgage fail because the Appellants waived that argument, are estopped from asserting it, and Tudela had a valid interest in the properties that were mortgaged. Finally, Silco asserts that the Appellants waived the defense of unclean hands and that such a defense does not apply because Silco did not engage in intentional misconduct and the Appellants' argument is based on a premise that Tudela executed a fraudulent document and then used that fraudulent document to induce Silco to allow him to assume the Lease.

Initially, we observe that the Appellants admitted that Tudela executed and delivered the Mortgage as security for the Lease. Specifically, Silco's complaint alleged:

> 25. As security for the Lease Agreement, Tudela executed and delivered unto SILCO a Mortgage dated August 13, 2004 and recorded August 19, 2004, as Instrument Number 2004R00029044, in the office of the Vanderburgh County Recorder ("Mortgage")[.]
>
> 26. A true, correct and complete copy of the Mortgage is attached hereto, and made a part hereof, as Exhibit E.

15

27. The Mortgage granted SILCO a real estate mortgage interest in the real estate located in the County of Vanderburgh . . . .

Id. at 21-22. In their answer, the Appellants admitted the allegations contained in Paragraphs 25, 26, and 27 of Silco's complaint.

Even assuming that the Appellants did not waive the argument that the Mortgage lacked consideration and did not admit the existence of the Mortgage, we cannot say that the Appellants' arguments are persuasive. With respect to their argument that the ownership of the properties "seems to have been in a state of limbo," we observe that the legal descriptions of the properties bequeathed to Tudela from his mother match the legal descriptions of the properties in the Mortgage. Tudela's mother died on April 21, 2002, and the docket information from the estate of Tudela's mother indicates that her will was offered and admitted to probate on January 24, 2003. Id. at 221. Both of these events occurred before Tudela signed the Mortgage on August 13, 2004. Under the circumstances, we cannot say that the Appellants' argument that the Mortgage is void is persuasive. See Burkam v. Burk, 96 Ind. 270, 273 (1884) (holding that while a party was not invested with the legal title, she was with an equitable estate and that was the subject of the mortgage).

To the extent Silco contends that the Appellants are estopped from claiming that Silco was not entitled to foreclose Tudela's interest in the mortgaged properties, we observe that the Mortgage provided:

WARRANTY: DEFENSE OF TITLE: The following provisions relating to ownership of the Real Property are a part of this Mortgage:

Title: [Tudela] warrants that: (a) [Tudela] holds good and marketable title of record to the Real Property in fee simple, free and clear of all liens and

16

> encumbrances, and (b) [Tudela] has the full right, power, and authority to execute and deliver this Mortgage to [Silco].

Appellants' Appendix at 112-113. Under the circumstances, we conclude that the Appellants are estopped from claiming that the Mortgage is void. See Boone v. Armstrong, 87 Ind. 168, 169 (1882) (holding that the appellant was estopped by the covenants of her mortgage from asserting that she did not own the estate which the mortgage purports to encumber); Plowman v. Shidler, 36 Ind. 484, 488 (1871) ("The fifth paragraph alleges that at the date of the mortgage, the defendants had not, nor have they at any time since had, any title to the mortgaged property. This answer is merely trifling, and deserves no further notice than to say that it was bad, and the demurrer was properly sustained to it.").

Even assuming that the Appellants are not estopped, we do not find their arguments persuasive. A mortgage must be supported by consideration to be enforceable. Huntingburg Prod. Credit Ass'n v. Griese, 456 N.E.2d 448, 451 (Ind. Ct. App. 1983). Any consideration which will sustain a promise to pay will suffice. Id. It is not necessary that the obligee actually give anything of value to the obligor, and sufficient consideration will be found if it is shown that the mortgagee suffered any damage, inconvenience, detriment or loss, or that he extended any forbearance in reliance upon the mortgage. Id. Consideration exists if it is shown that any right, profit, or benefit accrued to the mortgagor, or that responsibility was suffered or undertaken by another. Id. Where the thing agreed upon as the consideration has no determined value, the judgment of the parties as to its sufficiency will not be disturbed by the court; and where a party without fraud or deception enters into a contract for consideration and receives all he

17

contracts for, he cannot be relieved on the ground of want of consideration. Id. at 452. Whether consideration is given is a question of fact for the jury. Ind. Dep't of State Revenue v. Belterra Resort Ind., LLC, 935 N.E.2d 174, 179 (Ind. 2010), reh'g granted on other grounds, 942 N.E.2d 796 (Ind. 2011). However, whether consideration exists is generally a question of law for the court. Id.

The contemporaneous document doctrine provides that "[i]n the absence of anything to indicate a contrary intention, writings executed at the same time and relating to the same transaction will be construed together in determining the contract." Gold v. Cedarview Mgmt. Corp., 950 N.E.2d 739, 743 (Ind. Ct. App. 2011) (citing Salcedo v. Toepp, 696 N.E.2d 426, 435 (Ind. Ct. App. 1998)). Even if documents are executed at different times, they may still be construed together as long as they relate to the same transaction. Id. Application of the contemporaneous document doctrine is determined on a case-by-case basis, and the doctrine should be applied cautiously when the documents involve different parties. Murat v. South Bend Lodge No. 235 of Benev. & Protective Order of Elks of U.S., 893 N.E.2d 753, 757 (Ind. Ct. App. 2008), reaff'd on reh'g, trans. denied. The designated evidence reveals that the Assignment, the Consent, and the Mortgage were all signed by Tudela on the same day, and the Mortgage specifically refers to the Lease. The Mortgage states: "THIS MORTGAGE IS GIVEN TO SECURE (1) PAYMENT OF THE INDEBTEDNESS AND (2) PERFORMANCE OF ALL OBLIGATIONS OF GRANTOR UNDER THIS MORTGAGE AND THE LEASE," and the Mortgage defined the "Lease" as "that certain Lease Agreement entered into on March 25, 2003, by and between Landlord and Four O Three, Inc., an Indiana

18

corporation relating to the property commonly described as 1 N. Weinbach, Evansville, Indiana and which Lease has been assigned to [Tudela] pursuant to that certain Consent to Assignment of Lease Agreement and Release dated August 13, 2004." Appellants' Appendix at 108. The Mortgage also states: "For valuable consideration, [Tudela] mortgages, warrants, and conveys to [Silco] all of [Tudela's] right, title, and interest in and to the following described property . . . ." Id. at 107. Based upon the contemporaneous document doctrine and construing the documents together, we cannot say that the Mortgage lacked consideration or that there is a genuine issue of material fact on this issue.

C.    Surrender of Tenancy

The Appellants argue that there was at least a genuine issue of material fact as to whether there had been a "surrender of tenancy." Appellants' Brief at 19. The Appellants contend that Silco's "representations to Tudela and actions manifest agreement to accept a surrender of the tenancy which was reasonably relied upon by Tudela." Id. at 20. The Appellants point to the letters from Tudela's attorney to Nelson which were dated October 8, 2008, and December 12, 2008, and argue that "the first time Landlord ever denied and disputed that a surrender of tenancy had taken place is more than three (3) years later, in June of 2012, when Nelson made his first affidavit." Id. at 21. The Appellants contend that Silco made an agreement, initially acted in conformity with the agreement, remained silent when presented with letters from Appellants' counsel, and now is attempting to "hide behind provisions in the lease after he later changes his mind." Id. The Appellants also contend that "[t]he fact that Landlord failed

19

to respond when sent the correspondence . . . also gives rise to a genuine issue of material fact as to equitable estoppel." Id. at 22. The Appellants argue that "Landlord's positive actions in taking over and operating the cafeteria as his own also constituted such a representation through an act of the Landlord." Id. at 23. The Appellants further contend that "[i]t cannot be questioned that Landlord intended that Tudela act in reliance on those representations, which Tudela did, in willingly turning over operation of the Cafeteria to Landlord and even assisting with the transition." Id. The Appellants finally allege that they designated evidence sufficient to support a *prima facie* case of conversion and theft sufficient to sustain a civil claim under Ind. Code § 34-24-3-1 and the common law of conversion.

Silco argues that Tudela never pled surrender of tenancy, that there was no surrender of tenancy, that it had a specific right to lock out Tudela pursuant to the Lease, that Tudela testified that he understood that Silco's re-entry onto the premises did not constitute a termination of the Lease, and that there was no written authorization by Silco of the surrender as required by the Lease. Generally, termination of a lease agreement occurs when the tenant surrenders the tenancy and the landlord accepts the tenant's surrender. Floyd v. Rolling Ridge Apartments, 768 N.E.2d 951, 955 (Ind. Ct. App. 2002). "A surrender of tenancy is a yielding of the tenancy to the owner of the reversion or remainder, wherein the tenancy is submerged and extinguished by agreement." Id. A surrender may be express or by operation of law. Id. By examining the actions of the respective parties, surrender and acceptance is determined on a case-by-case basis. Id. It is a general rule that a tenant will be relieved of any obligation to pay further rent if the

landlord deprives the tenant of possession and beneficial use and enjoyment of any part of the premises by an actual eviction. Nylen v. Park Doral Apartments, 535 N.E.2d 178, 181 (Ind. Ct. App. 1989), trans. denied. An exception to the general rule exists when the lease includes a savings clause expressly providing that termination shall not affect the accrual of liability for rent. Id. If a lessee abandons the leased estate and the lessor resumes possession, this conduct is generally held to have worked a surrender by operation of law because possession by the lessor for its own purpose is inconsistent with the continuance of the lease, unless the lease contains a provision preserving the lessee's liability for future rent under such circumstances. Grueninger Travel Serv. of Ft. Wayne, Ind., Inc. v. Lake Cnty. Trust Co., 413 N.E.2d 1034, 1045 (Ind. Ct. App. 1980).

Paragraph 41 of the Lease governs default and provides:

(c) *No such re-entry or taking possession of the Premises by Landlord shall be construed as an election on its part to terminate this Lease and Tenant hereby specifically waives any law, statute, rule, decree or judgment of any court to the contrary.* Notwithstanding any such re-entry without termination, Landlord reserves the right to elect to terminate this Lease for such previous breach.

(d) If an Event of Default shall occur and shall not be cured in the manner as herein provided (unless Tenant is not entitled to an opportunity to cure such default), Landlord and Tenant covenant and agree that Landlord shall immediately have the following rights and remedies: (i) to immediately re-enter the Premises by summary proceedings, if necessary, and to dispossess Tenant and all other occupants thereof and to remove and dispose of all property therein or to store such property in a public warehouse or elsewhere at the cost and for the account of Tenant without Landlord being deemed guilty of trespass or becoming liable for any loss or damage which may arise out of such action; (ii) to cancel and terminate this Lease upon three (3) days notice to Tenant stating that this Lease and the term hereof shall expire and terminate on the date specified in such notice, and upon such specified notice, this Lease and all rights of the Tenant under this Lease shall expire and terminate as if that date

were the date definitely fixed in this Lease for the termination of the term; (iii) to cancel and terminate Tenant's right to possession of the Premises only, and in the event of such election, Tenant shall immediately quit and surrender possession of the Premises only but Tenant shall remain liable for damages as hereinafter provided. Landlord shall have the right, at its election, to pursue any and/or all of such rights together with any other right or remedy which may be available to Landlord under any statute or rule of law then in effect.

\* \* \* \* \*

(j)     The rights and remedies herein reserved by or granted to Landlord and Tenant are distinct, separate and cumulative, and the exercise of any one of them shall not be deemed to preclude, waive or prejudice their right to exercise any or all others.

Id. at 95-96 (emphasis added). Paragraph 42 of the Lease is titled "Landlord's Lien" and

provides:

*Tenant hereby expressly grants to Landlord a security interest in and an express contractual lien upon Tenant's or any other party's goods, wares, equipment, signs, fixtures, furniture and other personal property situated in or on the Premises, including all after-acquired property, replacements and proceeds ("secured property") to secure the performance by Tenant of its obligations under this Lease*, and such property shall not be removed from the Premises without the written consent of Landlord until all rents and other sums of money then due to Landlord shall have first been paid except for the sale of inventory in the ordinary course of Tenant's business so long as such inventory is replaced by Tenant. Tenant hereby appoints Landlord as Tenant's attorney-in-fact, and authorizes Landlord to execute and to file financing statements signed only by Landlord (as attorney-in-fact) covering such security or to otherwise take such action as may be necessary to perfect such security interest and/or contractual lien. *Upon an occurrence of an Event of Default by Tenant, Landlord may, in addition to any other remedies, enter upon the Premises and take possession of such secured property situated on the Premises without liability for trespass or conversion, and sell the same with notice at public or private sale, with or without having such property at the sale, at which Landlord or its assigns may purchase, and may apply the proceeds thereof less any and all expenses connected with the taking of possession and sale of the property, as a credit against any sums due by Tenant to Landlord.* Any surplus shall be paid to Tenant, and Tenant agrees to pay any deficiency forthwith, after demand. Landlord, at its option may foreclose said security interest and/or

22

contractual lien in the manner provided by law. The security interest and contractual lien herein granted to Landlord shall be in addition to any Landlord's lien that may now or at any time hereafter be provided by law.

Id. (emphases added).

Paragraph 59(c) of the Lease provides: "This Lease shall not be modified except in writing, nor may this Lease be canceled by Tenant or the Premises surrendered except with the express written authorization of Landlord, unless otherwise specifically provided herein." Id. at 99. The designated evidence indicates that Tudela acknowledged that he did not receive any letter from Silco in which it agreed to terminate the Lease. Specifically, a deposition of Tudela contains the following exchange:

> Q    . . . Are you going to contend at the trial of this case that there was ever an agreement between you and Mr. Nelson to terminate the lease?
>
> A    Yes. As of September 15th when he took over, that was what I'm going to say that that was the end of my obligations to the lease.
>
> Q    And are you going to have any evidence that Mr. Nelson agreed to that conclusion?
>
> A    Other than him taking over the business and running it as his business.
>
> Q    So you didn't – you didn't have a conversation with him in which he agreed to terminate the lease. Is that a true fact?
>
> A    Not exactly about the lease, correct.
>
> Q    Okay. And you didn't have any letter from him in which he agreed to terminate the lease?
>
> A    Correct.

* * * * *

23

Q  Did Mr. Nelson ever tell you that SILCO would not enforce the provisions of the lease upon your default?

A  No, he did not.

Q  Do you claim that SILCO waived any of its rights under the lease?

A  When they took possession, yes.

Q  And it's your contention that him taking possession of the premises, what, waived his rights under the lease?

A  Right. Whenever he decided to take over the business and run it as his business, yes.

Q  Yes what?

A  Yes, he took – that my lease stopped and he took over the –

Q  Did he ever tell you that?

A  He didn't tell me that, per se.

Q  Do you have any letter that records that agreement between you and he?

A  No, other than he saying we're taking over the business, that's all.

* * * * *

Q  I'm wanting to know, do you have any evidence from Mr. Nelson that he agreed to terminate your lease?

A  No, I do not.

Q  Do you have any record or document or letter from Mr. Nelson in which he agreed to waive any of his rights under the lease?

A  I do not.

Id. at 169-171.

24

Based upon the designated evidence, we conclude that there is no genuine issue of material fact and that the trial court did not err in granting Silco summary judgment on this basis. See Nylen, 535 N.E.2d at 182 (holding that the savings clause in a rental agreement was valid and enforceable and that "[i]t is entirely consistent with existing Indiana case law to uphold a lease provision which states that the lessee's liability for rent for the balance of the lease term will continue, notwithstanding an order of eviction," and concluding that the award of future rents based upon the rental agreement was not contrary to law); Grueninger, 413 N.E.2d at 1043 (upholding a lease provision which authorized the landlord to re-enter and re-let the leased premises without terminating the original tenant's liability).

D.    Late Fees and Interest

Without citation to authority other than the Lease, the Appellants argue that the court erred when it awarded late fees and interest. The Appellants argue that Paragraph 13 of the Lease imposes a one-time late fee for each month or part of a month in which rent is paid more than ten days late and that the Lease does not impose an ongoing compounding "$50.00 per month fee that accumulates ad infinitum as charged by Landlord and awarded by the Trial Court." Appellants' Brief at 29. The Appellants contend that even though the Lease expired on March 31, 2009, that the court "awarded a compounded ongoing, per month, compounding late fee of $50.00 per month for more than two years after March 31, 2009." Id. The Appellants also argue that the court awarded Silco compound interest and that the Lease does not provide for compounding of interest. Silco argues that the Lease provides for interest charged on past due rents and

25

also provides for a late fee of $50.00 per month and that Indiana law allows fees for late payment to be added to the rental amount past due and for interest to be chargeable upon all unpaid rental balances.

Paragraph 13 of the Lease governs past due rents and provides:

(a)     *If Tenant shall fail to pay any rents, Additional Rents or other charges after the same become due and payable, such unpaid amounts shall bear interest from the due date thereof to the date of payment at the maximum legal rate of interest allowed to be charged to Tenant under any applicable law of the state of Indiana.*

(b)     In addition thereto, if Tenant shall fail to pay any rents, Additional Rents, or other charges within ten (10) days after the same become due and payable, then Tenant shall also pay to Landlord a late payment service charge covering administrative and overhead expense . . . equal to Fifty Dollars ($50.00) *for each calendar month or part thereof after the due date of such payment until received by Landlord.* The provisions herein for late payment service charges shall not be construed to extend the date for payment of any sums required to be paid by Tenant hereunder or to relieve Tenant of its obligation to pay all such sums when due. Notwithstanding the imposition of such service charges, Tenant shall be in default under this Lease if any or all payments required to be made by Tenant are not made within five (5) business days of Landlord's notice to Tenant that any such payment has not been received when due. The notice for demand by Landlord for payment of such late payment service charges shall not be construed as a cure of such default on the part of the Tenant.

Appellants' Appendix at 83 (emphases added).

We observe that the trial court's order did not explicitly mention a late payment service charge as detailed in the Lease or compound interest. However, as noted earlier, the total amount awarded by the trial court is within ten dollars of the amount mentioned by Nelson in his affidavit, and a spreadsheet attached to that affidavit appears to indicate

26

late charges of $50 as well as interest.  Based upon the emphasized language in the Lease, we cannot say that the trial court erred on this basis.

E.       Attorney Fees

The Appellants contend that the court erred when it awarded Silco its request for $38,000 in attorney fees without reduction, and argues that Paragraph 41(o) of the Lease entitles the successful party in litigation to the lesser of its actual attorney fees, costs and expenses or $2,000.  Without citation to the record, Silco argues that the trial court awarded attorney fees for both breach of the Lease and foreclosure of the Mortgage. Silco contends that the fees related to the foreclosure are not limited by the Lease.

Paragraph 41 of the Lease governs default and states in part:

(e)      If an Event of Default shall occur and shall not be cured in the manner as herein provided (unless Tenant is not entitled to an opportunity to cure such default) and if Landlord has not elected to cancel and terminate this Lease as provided in subsection (d)(ii) hereof, then Landlord and Tenant covenant and agree that Landlord shall have the right to recover all damages that Landlord may sustain by reason of such default, including, without limitation, the cost of recovering the Premises, reasonable attorney's fees and court costs.

* * * * *

(o)      In the event of any litigation or formal legal proceeding between the parties to this Lease, Landlord and Tenant specifically covenant and agree that the prevailing party in such litigation, including appellate proceedings, shall be entitled to recover, in addition to other damages, as full and complete compensation for all court costs, expenses and reasonable attorneys' fees that it may incur in connection with such litigation or proceeding, the lesser of (i) the total amount of such costs, expenses, and attorneys' fees actually incurred by it, or (ii) the sum of Two Thousand Dollars ($2,000.00), and the parties expressly waive any statute, rule of law or public policy to the contrary and further covenant and agree that they shall confirm such waiver in writing at the time of commencement of any such action, proceeding or counterclaim.

27

Appellants' Appendix at 97.

The Mortgage contains the following:

<u>Attorneys' Fees: Expenses.</u>  If Lessor institutes any suit or action to enforce any of the terms of this Mortgage, Lessor shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and on any appeal.  Whether or not any court action is involved, all reasonable expenses incurred by Lessor that in Lessor's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the indebtedness payable on demand and shall bear interest from the date of expenditure until repaid at the rate of eighteen percent (18%) per annum.  Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lessor's attorneys' fees and Lessor's legal expenses whether or not there is a lawsuit, including attorneys' fees for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, and title insurance, to the extent permitted by applicable law, Grantor also will pay any court costs, in addition to all other sums provided by law.

<u>Id.</u> at 117.

The trial court's order mentioned attorney fees but did not mention a specific amount.  Specifically, the order states:

IT IS FURTHER ORDERED by the Court that SILCO is given a personal judgment against the Defendants, jointly and severally, in the amount of $183,605.52, comprised of $236,661.86 minus the amount in Sohn & Associates' escrow for sale of Weinbach Cafeteria property in the amount of $43,171.59 and minus the credit SILCO has allowed Defendants based on items it has been unable to locate amounting to $3,992.00, and minus payment made by Defendants in the amount of $5,892.75 dated July 13, 2006 which has now been proven as received by SILCO, plus post judgment interest, plus advances by SILCO for real estate taxes, insurance premiums, maintenance costs, *attorney and paralegal fees*, and all other advances and any additional costs of collection, expenses and disbursements incurred including, but not limited to, *attorney fees and costs*, Sheriff's Sale costs, environmental studies on the property, disbursements for real estate taxes, appraisals, bankruptcy fees and costs,

28

court costs, and disbursement for hazard insurance premiums which SILCO must pay to preserve the subject property and SILCO's interest and rights therein, all without relief from valuation or appraisement laws.

Id. at 13-14 (emphases added).

Based upon the trial court's order, we cannot determine the amount of the attorney fees or whether the fee award complied with the applicable provisions of the Lease and Mortgage. Accordingly, we remand to the trial court to apply the provisions in the Lease and the Mortgage and specify the amount of the attorney fees awarded to Silco.

F.      Duty to Mitigate

In the Appellants' response to Silco's motion for summary judgment, the Appellants argued that Silco "designated no evidence that it made any effort to re-let the premises, instead relying upon the penalty provision in the lease and Plaintiff has allowed no credit for the benefits it received from taking over and operation of the restaurant for several months." Appellants' Appendix at 182. On appeal, the Appellants argue that "[e]ven if a breach is found by tenant, the Landlord has a duty to mitigate his damages by reletting." Appellants' Brief at 30. The Appellants argue that Silco "never designated any evidence that it made any effort to re-let the premises nor allowed any credit for its own business use of the premises during the time it operated the Cafeteria, instead relying solely upon the penalty provision in the lease to impose strict liability for all rents accruing during the entire time." Id. at 31. Silco argues that Tudela's deposition was improperly designated and that the Appellants' "evidence of SILCO failing to use reasonable diligence to mitigate damages is non-existent." Appellee's Brief at 23.

Generally, a nonbreaching party must mitigate damages. Bruno v. Wells Fargo Bank, N.A., 850 N.E.2d 940, 948 (Ind. Ct. App. 2006); Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC, 870 N.E.2d 494, 507 (Ind. Ct. App. 2007). The breaching party has the burden of proving that the nonbreaching party has failed to use reasonable diligence to mitigate damages. Bruno, 850 N.E.2d at 948; Four Seasons, 870 N.E.2d at 507.

Tudela's affidavit states that "[d]uring the 2008 – 2009 time period, David Nelson owned and operated a restaurant." Appellants' Appendix at 188. The Appellants alleged in their response that Silco "changed the locks, dispossessed defendants of the premises and continued operation of the Weinbach Cafeteria as a going concern." Id. at 174.

To the extent that Silco argues that Tudela's deposition was not properly designated, we observe that the Appellants designated Tudela's deposition and affidavit and pointed to specific portions of them in their response to Silco's motion for summary judgment which was filed on August 13, 2012, the date the court granted the Appellants' motion for additional extension of time to respond to Silco's motion for summary judgment. Moreover, Silco designated portions of Tudela's deposition, and in Silco's brief in support of its motion for summary judgment and to foreclose the Mortgage, Silco cited Tudela's deposition and later stated, without citation to the record, that "pursuant to the clear terms of the Lease, SILCO had the right to take possession of the premises, attempt to operate the restaurant in order to mitigate its damages, and seize the equipment." Id. at 72.

While the Appellants have the burden of proving that Silco failed to use reasonable diligence to mitigate damages, we conclude based upon the designated

30

evidence that there is a genuine issue of fact as to whether Silco failed to use reasonable diligence to mitigate damages. Accordingly, we reverse and remand on this issue.

G.     Accounting

In Count III of their counterclaim, the Appellants requested Silco to provide a full accounting and inventory itemization and valuation for the Weinbach Cafeteria as of August 16, 2008. The Appellants also alleged that Silco failed to account for its operation of the Weinbach Cafeteria since its assumption of management of the Cafeteria on September 16, 2008, and failed to provide an accounting for all of the equipment, furniture, personal property, food, accounts payable, and other assets of the Cafeteria. On appeal, the Appellants argue that Silco did not provide an adequate accounting. The Appellants argue without citation to the record that "the Trial Court ignored designated evidence . . . of the $18,716.84 food inventory, $1,705.18 in cash on hand, $750.00 liquor inventory and the equipment either used in Nelson's other restaurant or that he sold on the side outside the auction, all of which were converted by Landlord." Appellants' Brief at 34.

Silco argues that the court did not err in fashioning a remedy without an accounting because Silco put forth evidence regarding financial information and the Appellants did not mention the accounting issue in their response. Without citation to the record, Silco argues that "[t]he first time [the food, cash, and liquor] make an appearance in the case is Tudela's sureply brief (filed without permission of the trial court) which mentions the food relying on Exhibit 7 to Tudela's deposition (which was not filed within Tudela's filing requirements)." Appellee's Brief at 25. Silco also argues that Exhibit 7

31

attached to Tudela's affidavit lists food inventory, liquor inventory, and cash deposits but that the exhibit and affidavit constitute mere speculation based on a self serving document prepared by Tudela.

In their reply brief, the Appellants state that Silco argues for the first time on appeal that Tudela's filing of his deposition was untimely and that Silco has waived this issue. The Appellants also contend that "[w]hat Landlord fails to mention is that, in filing his Motion to Publish Deposition, Tudela sought to have the Court order Landlord, as the entity taking the deposition tender the original." Appellants' Reply Brief at 11.

With respect to Silco's argument that Tudela's deposition may not even be considered, we again observe that Silco designated portions of Tudela's deposition. The Appellants designated the deposition and then specified portions of the deposition as well as Exhibit 7 attached to the deposition in the portion of the document titled "STATEMENTS/ISSUES OF FACT WHICH PRECLUDES SUMMARY JUDGMENT." Appellants' Appendix at 172. We cannot say that Tudela's deposition and Exhibit 7 were improperly designated.

Generally, an action for an accounting is a proceeding in equity and is addressed to the sound discretion of the trial court. Atwood v. Prairie Vill., Inc., 401 N.E.2d 97, 100 (Ind. Ct. App. 1980); 1 I.L.E. Accounts and Accounting § 1. An action for an accounting has the purpose of adjusting the account of the litigants and of rendering complete justice in a single action. Anacomp, Inc. v. Wright, 449 N.E.2d 610, 616 (Ind. Ct. App. 1983).

32

Silco designated the affidavit of Karen Woolston, the corporate secretary and treasurer of Sohn, which detailed the items sold from the Weinbach Cafeteria in nineteen pages. However, as mentioned earlier, there is at least a question of fact with respect to whether Silco failed to use reasonable diligence to mitigate damages which bears on the issue of the accounting. Further, the designated evidence reveals that the Weinbach Cafeteria had food and liquor inventory, and Silco does not point to designated evidence that such inventory was properly accounted. Specifically, during his deposition, Tudela indicated that the food inventory totaled $18,716.84. Tudela also indicated that he took inventory of the food, the equipment, and the furnishings, and Exhibit 7 to the deposition is titled "Weinback [sic] Cafeteria Balance Sheet" and includes food inventory, liquor inventory, and cash deposits. Appellants' Appendix at 479. Under the circumstances, we conclude that there is a question of fact with respect to the accounting and that the trial court erred when it granted Silco summary judgment on the Appellants' third counterclaim.

For the foregoing reasons, we affirm in part the trial court's order granting summary judgment to Silco, and reverse and remand for consideration of the issues related to attorney fees, mitigation of damages, and accounting.

Affirmed in part, reversed in part, and remanded.

BRADFORD, J., concurs.

RILEY, J., concurs and dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LILY, INC. d/b/a WEINBACH CAFETERIA and FERNANDO TUDELA, | ) ) ) ) | |
| Appellants-Defendants, | ) ) | |
| vs. | ) ) | No. 82A05-1209-PL-459 |
| SILCO, LLC, | ) ) | |
| Appellee-Plaintiff. | ) ) | |

**RILEY, Judge, concurring and dissenting**

I concur in part and dissent in part. I would affirm completely the granting of the summary judgment by the trial court to Silco. I find no material issues of fact remaining based on the designated evidence as to attorney fees and mitigation of damages.